IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ANTWON CARTER, R52311,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-1114-DWD** |
| | ) | |
| **ANTHONY WILLS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Antwon Carter, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleges that from October of 2024 through February of 2025, he did not receive pain medications that had been prescribed after an outside hospital visit. The Court allowed Plaintiff to proceed on a single claim against Defendant Wills. (Doc. 9). The matter is now before the Court on several motions, including Defendant Wills' Motion for Summary Judgment concerning exhaustion (Doc. 27). Plaintiff filed a timely response. (Doc. 34). For reasons explained in this Order, the Motion will be granted, Plaintiff's pending motions (Docs. 23, 25) will be denied, and this case will be closed.

## Background

Plaintiff's complaint was signed and dated February 18, 2025 (Doc. 1 at 7), but it was not received by the Court for filing until May 27, 2025. (Docket entry 1). At the outset, the Court ordered Plaintiff to show cause about the exhaustion of his administrative remedies, because in the complaint Plaintiff indicated that he had filed grievances in October of November of 2024, but that he was still awaiting a response as of February of 2025. (Docket entry 7). In response to the Order to Show Cause, Plaintiff indicated that as of August of 2025, he was still awaiting a response to his grievances, meaning it had taken nearly a year to get even a first level grievance response. (Doc. 8). With this assertion, the Court proceeded to an initial review of the complaint but indicated that in doing so it was not deciding the merits of any future exhaustion dispute.

Factually, Plaintiff alleged that he broke his arm in multiple places while in county jail, and in 2024 he was sent from Menard to a specialist to address long-term damage to his arm. (Doc. 1 at 6). He alleges that he was prescribed pain medications, but upon return to Menard he did not receive them. He began with a healthcare request slip and a letter to Defendant Wills, and after weeks passed without the medication he submitted an emergency grievance to Wills. He alleges that Wills received constant request slips and grievances from him about the situation, but that the only thing Wills did was deny his grievance emergency status without taking any further remedial action. Upon initial review of the complaint, Plaintiff was allowed to proceed on the following claim:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Anthony Wills for failing to investigate or respond to**

> **Plaintiff's numerous grievances and pieces of correspondence about his pain medication**.

(Doc. 9 at 3, 6). Other claims against additional defendants were dismissed as insufficiently pled. (*Id.*).

The parties appear to agree that there is just one officially documented grievance that bears some relevance to the claims in this case that was submitted at Menard—grievance K4-1024-5493.

## FINDINGS OF FACT

Grievance K4-1024-5493 was submitted by Plaintiff on October 22, 2024. (Doc. 27-3 at 1-2). In the grievance, which Plaintiff labeled as an emergency, Plaintiff alleged that he was filing a grievance against "Menard healthcare" because he was prescribed medication by an outside specialist in May of 2024 for nerve damage related to an old arm fracture, but that he had yet to receive it. Plaintiff alleged that without the medication, he suffered a lot of pain and discomfort. He further alleged that before writing the grievance he asked the nurse about his medication numerous times, but he was told that his medical file did not reflect any prescription orders. As relief, Plaintiff sought to be provided with his medication, and he sought a transfer. On October 25, 2024, Defendant Wills (or a signatory) deemed the grievance not an emergency. (*Id.* at 1).

The grievance was stamped as received for second level review on July 7, 2025. (Doc. 27-3 at 1). Plaintiff's cumulative counseling summary shows that he sought a copy of the grievance on February 10, 2025, at which time he was advised that it was pending initial review with the counselor, and that he could ask the counselor for updates. (Doc.

27-2 at 3). In support of the complaint, Plaintiff also submitted counseling receipts that reflect his February 10, 2025, attempt to seek a copy and update on his grievance. (Doc. 1 at 9-11). Plaintiff's cumulative counseling log reflects significant additional grievance activity between October of 2024 and October of 2025. (Doc. 27-2). Shane Gregson, a grievance officer at Menard, declared that in July of 2025 the grievance procedures were altered such that medical grievances no longer required a first level counselor review. (Doc. 27-4 at ¶ 5, Gregson Decl.). As such, any grievances that were pending in the system for counselor review concerning medical issues were submitted to the grievance office for second level grievance officer processing in mass on July 7, 2025. Plaintiff's grievance was in this batch, and Gregson attested that as of April 16, 2026, it was still awaiting grievance officer review. (*Id.*).

## Conclusions of Law

### A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact. *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what

is known as a *Pavey* hearing."). Following *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (2025), courts must now consider if an exhaustion dispute is intertwined with the merits of a claim, and if it is, the exhaustion must be deferred so that a jury can resolve contested factual issues. The Seventh Circuit has instructed that courts consider this as a preliminary issue before conducting an evidentiary hearing on exhaustion. *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. However, "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting," then the grievance procedure becomes unavailable. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (finding that an inmate who placed a timely ARB appeal in his chuckhole for

mailing, but whose grievance was apparently lost, did all that he could to follow exhaustion procedures).

As an inmate in the Illinois Department of Corrections (IDOC), Plaintiff must follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. If an inmate is unsatisfied with the outcome at the facility he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The Illinois Administrative Code provides that the grievance officer shall "when reasonably feasible under the circumstances" make recommendations to the prison's Chief Administrative Officer (CAO) on a grievance within two months of receipt. 20 Ill. Admin. Code § 504.830.

Although courts have not treated the 60-day timeframe in § 504.830 as a firm deadline that allows an inmate with a non-response to proceed immediately to a lawsuit, courts have suggested that if an inmate has no clue if or when a response might come, then the process may become obscure or unavailable. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020) (finding that an inmate who never got a response to a standard grievance, and who got two unhelpful responses from the ARB that did not indicate if anyone was investigating, had run into an administrative process that was unavailable to him); *compare with Ford v. Johnson*, 362 F.3d 395, 400 (7th Cir. 2004) (holding that the passage of the 60-day aspirational timeline without a response did not automatically open the avenue for a lawsuit if the prison was still investigating a grievance). In *Reid*, an inmate

alleged an assault by a prison staff member and simultaneously filed an emergency and standard grievance. The Warden deemed the emergency grievance a non-emergency. The prison responded to the standard grievance with an indication the matter had been referred for internal investigation, but it never provided a formal ruling on the grievance. Plaintiff tried several times to get assistance from the Administrative Review Board and prison with the grievance, but got no advice on what he could do or how long he should expect to wait for a response. Against this backdrop, the Seventh Circuit found that the process was obfuscated, that Plaintiff's standard grievance never got a response, that he had no reason to believe any grievances were being investigated further, and that the process was thus unavailable.

The "failure to exhaust is an affirmative defense, and as such the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) *citing* *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022); *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). "In short, if there are contested facts as to whether a prison grievance process was available (keeping in mind that the burden of proof is on the defendants to show a lack of exhaustion), summary judgment is not appropriate and this gateway factual determination must be made in a Pavey hearing." *Smallwood*, 59 F.4th at 315.

**B. Analysis**

The parties do not indicate there is a *Perttu* dispute, and the Court agrees that the record does not present *Perttu* intertwinement. The initial dispute between the parties

that must be resolved is the availability of the grievance process. Defendant contends that the process was available to Plaintiff because he was able to file grievance K4-1024-5493, as well as many other grievances during the relevant timeframe. Furthermore, his cumulative counseling summary reflects that the grievances moved through the various steps of review, and that Plaintiff was informed of how to seek a status update. Plaintiff counters that because he still has yet to get a response to grievance K4-1024-5493, the grievance process was unavailable. There is no set rule about how long an inmate must wait for a grievance response, or what he must do to follow up on a properly filed grievance before the grievance process is deemed unavailable.

In this case, Plaintiff sought just one or two status updates in January and February of 2025, approximately 2-2.5 months after he filed grievance K4-1024-5493. He was informed at that time that his grievance was still pending and that he could contact the grievance office directly for more information. There is no indication that he ever attempted to seek an update after February of 2025, and waiting only 2.5 months for a grievance response where the prison has acknowledged that the grievance is in the queue, is not a particularly long time.

However, it also speaks volumes that the grievance got no first level counselor response from October of 2024 through July of 2025 when it was forwarded to the grievance office under the new procedure, and that it then continued to languish through April or May of 2026 without an answer. The undersigned has previously concluded under extremely narrow circumstances that delays this long might amount to unavailability of the grievance process. *See Johnson v. Sadler*, 2025 WL 3753970 (S.D. Ill.

Dec. 29, 2025) (finding that grievances that took 9-16 months to get a response, and several that got no response, supported a finding of unavailability based on the inexcusably slow nature of the grievance process); *Morris v. Taylor*, 2025 WL 1676279 (S.D. Ill. June 13, 2025) (noting that a 16 month delay from the filing of a grievance to final disposition was too long, and supported a finding of unavailability). In making these findings, the undersigned has continued to admonish IDOC that grievance processing that takes a year or more is unacceptable and will continue to lead to findings that the process is unavailable to inmates.

Exhaustion is a mandatory precondition to suit, but an inmate is only required to exhaust those remedies that are available to him. *See e.g. Reid v. Balota*, 962 F.3d 331. In this case, Plaintiff timely filed a grievance, and when he was not getting an answer, he sought a status update from his counselor and the grievance office. Ultimately, Plaintiff waited from October of 2024 through May of 2025 before filing suit, and as of April of 2026 the Defendant admits the grievance was still pending. This timeline establishes a 17-month period where Plaintiff did not receive a second level response from the prison, and thus the Court concludes the grievance process was not available for grievance K4-1024-5493.

Despite the process being unavailable for grievance K4-1024-5493, there is another more fundamental problem. The Defendant argues that the grievance did not name or describe conduct by Defendant Wills, and Plaintiff does not refute this argument at all in his summary judgment response. Neither the PLRA nor IDOC's grievance rules require an inmate to name each individual involved in an incident within the body of the

grievance. *See Jones v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement."). The Seventh Circuit has recently reiterated that a grievance must contain enough information about a problem so that the prison can properly investigate and resolve grievances. *See Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). The primary requirement is that a grievance contain enough information to put the prison on clear notice that unnamed defendants were involved. *Id.*

A plain reading of the grievance indicates that it is directed at the Menard medical staff, and in particular an unnamed nurse whom Plaintiff had asked about his medication. There is not a single statement in the grievance that tends to suggest that when it was filed Plaintiff also believed that prison administrators or Warden Wills had any awareness or responsibility for allowing his lack of medication to persist. There is a significant body of Seventh Circuit case law, and countless district court decisions, addressing the adequacy of grievances to exhaust claims against defendants who are not named or described in the grievance. *Compare Maddox v. Love*, 655 F.3d 709, 721-22 (7th Cir. 2011) (finding that a grievance about religious exercise was adequate to exhaust a claim against a warden where the warden participated in processing the grievance) *with Schillinger v. Kiley, et al.*, 954 F.3d 990 (7th Cir. 2020) (finding that a grievance targeted at staff involved during and after an attack did not exhaust a claim against an unnamed officer who had knowledge *before* the attack); *see also Glick v. Walker*, 385 Fed. App'x 579, 582-83 (7th Cir. 2010) (finding that two grievances that clearly described issues without employee names, and that were substantively assessed at each level of the grievance process, were sufficient for exhaustion because the PLRA does not have a strict "name all

defendants" mandate); *Williams v. Luking*, 2023 WL 317663 at * 5 (S.D. Ill. Jan. 19, 2023) (finding that an inmate's grievance that reasonably described deficient medical care, included a consultation of relevant medical professionals in the response process, and was exhausted at all levels, was sufficient for exhaustion even if it did not contain the names of prison officials); *Olden v. Jackson,* 2024 WL 4601042 at *4 (Oct. 29, 2024) (unpublished panel decision) (finding that a grievance with a passing mention of "telepsyci" was insufficient to exhaust a claim against a psychiatrist who was one of four at the prison where the grievance did not detail when the inmate interacted with the psychiatrist and did not say anything that would help the prison know which psychiatrist was allegedly responsible for a misdeed); *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (finding that a grievance about medical care with a generic reference to correctional staff who sent an inmate for medical care the day after an attack was not sufficient to exhaust a claim against an officer who allegedly had involvement with the inmate the day of the attack); *Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021) (finding that a grievance that alleged an officer ignored an inmate *during* an attack was not aligned with later allegations in litigation that several officers knew of the risk of an attack *before* the attack occurred).

In this particular case, the Court does not find grievance K4-1024-5493 sufficient to exhaust the allegations against Wills because it does not contain sufficient substantive content to suggest that Wills was in any way a target of the grievance. In the complaint, Plaintiff claims that he submitted countless letters *and* grievances to Wills about his situation, but unadorned statements at summary judgment that do not have any

evidentiary backing are insufficient to create a genuine dispute of material fact. *See e.g.*, *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 833 (7th Cir. 2019) (a plaintiff's bare unadorned claim that an officer's actions were malicious was not enough at summary judgment to proceed). Plaintiff's complaint plainly suggests he communicated with Wills multiple times via letters and grievances, but grievance K4-1024-5493 does not mirror this assertion, and there is no evidence in the record that supports it. Grievance K4-1024-5493 is not enough proof standing alone to infer liability against Wills. This is particularly true because Wills' sole interaction with the grievance was to deem it a non-emergency and given that there are circled initials written by Wills' name it seems likely a designated signatory performed that role for Wills. As such, there is insufficient evidence to demonstrate that grievance K4-1024-5493 named Wills or described his conduct, or that his role in the processing of the grievance was enough to infer liability against him.

The Court concludes that despite the grievance process being unavailable for grievance K4-1024-5493, the grievance was not sufficient to exhaust the claim in this case against Wills. Plaintiff does not point to any other evidence in the record demonstrating he pursued any other grievances to exhaust his claims, and his cumulative counseling summary clearly shows he pursued many grievances during the relevant timeframe. As such, this case will now be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies.

Plaintiff's pending Motion to Compel (Doc. 23) wherein he sought access to early discovery materials is denied as moot because the Defendant attested that the disclosure materials were timely sent but likely delayed in the mail (Doc. 24), and Plaintiff never

reiterated that he did not receive them. Additionally, Plaintiff's Motion for Leave to Amend (Doc. 25) is denied because the amended complaint does not alter or expand the operative claim against Defendant Wills in any way. At most, Plaintiff alleges in the proposed amended complaint that he attempted several emergency grievances with Wills, but he still only gives one example—grievance K4-1024-5493. The Court already considered this allegation as made in the original complaint, and the amended complaint offers no additional evidentiary or factual support. Thus, allowing the amended complaint would not change the current disposition of this suit in any way. The only impact at this point of allowing the amended complaint would be further delaying this litigation by requiring defendant to file a new answer and a new motion for summary judgment, all to reach the same outcome. Accordingly, Plaintiff's Motion for Leave to Amend will be denied.

## Disposition

Plaintiff's Motion to Compel (Doc. 23) and his Motion for Leave to Amend (Doc. 25) are **DENIED** for reasons explained above. Defendant Wills' Motion for Summary Judgment (Doc. 27) is **GRANTED**, and this case is dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies. The Clerk of Court shall enter judgment and close this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). If Plaintiff

chooses to appeal, he will be liable for the $605.00 filing fee[1] irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: November 20, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.11.20 09:43:34 -06'00'

DAVID W. DUGAN
United States District Judge

[1] The filing fee increases to $670 on December 1, 2026.